IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| JUSTIN M. LONGWORTH, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) **COMPLAINT** |
| | ) |
| UNITED STATES OF AMERICA | )<br>)<br>) |
| Defendant. | )<br>) |

## NATURE OF ACTION

1. This lawsuit arises from the continual sexual misconduct of Ms. Sherry Beck directed at Plaintiff Justin M. Longworth while Mr. Longworth was housed in the custody of the United States Bureau of Prisons ("BOP") at the Federal Correctional Complex in Butner, North Carolina ("FCC Butner").

2. Plaintiff Justin Longworth brings this action pursuant to the Federal Tort Claims Act for negligence by the United States of America, its employees and its agents.

## PARTIES

3. **Plaintiff JUSTIN MATTHEW LONGWORTH**, born March 28, 1980, is a former inmate of the Federal Correctional Institution in Butner, North Carolina ("FCI Butner"), where the events giving rise to the present claims occurred. He is currently

incarcerated at the low security Federal Correction Institution in Petersburg, Virginia ("FCI Petersburg Low"). Prior to his incarceration, Mr. Longworth was a citizen and resident of Springfield, Oregon.

4. **Defendant UNITED STATES OF AMERICA**, by and through the Federal Bureau of Prisons, a United States law enforcement agency, is responsible for the administration of the federal prison system, including FCC Butner and each of its facilities. Defendant United States of America ("United States") employed the individuals responsible for Mr. Longworth's injuries and was responsible for ensuring the safety of inmates in its custody at the Federal Correctional Complex in Butner, North Carolina.

## ADMINISTRATIVE EXHAUSTION

16. Plaintiff timely submitted his administrative FTCA claim to the BOP on June 11, 2020. The claim was filed with the BOP within two (2) years of the date accrual, in accordance with 28 U.S.C. § 2401.

17. On February 16, 2021, the Federal Bureau of Prisons issued a denial of Mr. Longworth's administrative claim, which was received by his counsel on February 26, 2021. This complaint is filed within six (6) months of that denial.

18. Mr. Longworth exhausted all administrative remedies as required by 28 U.S.C. § 2675(a); therefore, this Court now has jurisdiction over his claims brought against Defendant United States of America pursuant to the FTCA.

# FACTS

19. On May 10, 2016, Mr. Longworth was sentenced to 94 months in prison, followed by three (3) years of supervised release, by the Honorable Judge Ann Aiken, District Court Judge for the Federal District of Oregon. Mr. Longworth pleaded guilty to one count of "Felon in Possession of a Firearm" and one count of "Possession with Intent to Distribute Methamphetamine."

20. After his sentencing, Mr. Longworth was transferred from the Lane County Jail to FCI Sheridan in Sheridan, Oregon to begin his sentence.

21. Upon entering FCI Sheridan, Mr. Longworth disclosed in his intake interview that he had experienced sexual abuse as a child, which was documented in his BOP file.

22. Mr. Longworth also has a well-documented mental health history. He was diagnosed with bipolar disorder, post-traumatic stress disorder, and borderline personality disorder, and has a history of suicide attempts. He is prescribed several medications, which he takes daily to treat his conditions.

23. Mr. Longworth was transferred from FCI Sheridan to FCI Butner on July 22, 2016.

24. On February 17, 2017, Mr. Longworth began his work assignment as a plumber for the prison facilities. Throughout his work assignment, Mr. Longworth received positive evaluations from his supervisors.

25. During his work assignment as plumber, Mr. Longworth came into contact with Sherry Beck, who was the Secretary of Facilities. Beck was in charge of, *inter alia*, managing the payroll of all inmate employees.

26. Eventually, Beck took an inappropriate interest in Mr. Longworth, which soon advanced to daily, aggressive sexual pursuit of him. Mr. Longworth repeatedly rejected Beck's advances but was unsuccessful in his attempts to abate her conduct.

27. Specifically, Beck's sexual misconduct consisted of: forced oral sex, fondling and groping of the genitals, kissing, and biting. Not only did Beck engage in these acts herself, but she also forced she Mr. Longworth to perform these same acts on her.

28. The sexual pursuit of Mr. Longworth occurred in both the main offices of the facilities and in the attic, where Beck would lure Mr. Longworth by pretending to need assistance with work-related tasks. Despite Beck spending an unusual amount of time alone with Mr. Longworth, Andrew Mansukhani, Warden of FCI Butner, Medium, Anthony T. Scarantino, Housing Unit Manager (HUM) at FCC Butner, Patrick Burrell, a plumber for the FCI Butner facilities, and Matthew W. Haught, a Maintenance Mechanic for the FCI Butner facilities, did nothing to stop, abate or report the sexual misconduct Beck patently perpetrated.

29. Under fear of retaliation by Beck and other prison staff, Mr. Longworth did not initially report her misconduct. Indeed, Beck ensured Mr. Longworth's silence through continuous manipulation, coercion and bribery. Mr. Longworth, an inmate at FCI Butner, was not in a position to disobey Beck, an employee at FCI Butner who handled his payroll.

30. Beck's position as an authority figure not only allowed her to sexually pursue Mr. Longworth, but also gave her the ability to coerce Mr. Longworth to comply with almost any other request she made of him. A prime example of Beck's power was asking Mr. Longworth to tattoo her initials and retirement date on his body. (She promised him that, in return, she would remove her wedding ring.) Despite tattooing being against prison rules, Mr. Longworth complied with Beck's request out of fear of reprisal.

31. Eventually, but long after Beck's sexual pursuit of Mr. Longworth had started, some prison staff finally reported Beck's behavior. Haught reported Beck to her facilities supervisors; however, Haught also protected Beck by, all while acknowledging her misconduct, choosing not to report it to his superiors. Indeed, Defendant Haught did not report Beck to a Special Investigative Agent or to his supervisors, Mansukhani and Scarantino, as was required by prison policy.

32. Instead of taking appropriate disciplinary action against Beck, on September 26, 2018, Mr. Longworth was fired from his work assignment. In addition to enduring repeated sexual misconduct, Mr. Longworth was also no longer able to earn money.

33. Mr. Longworth was then placed in the Special Housing Unit (SHU), more commonly known as solitary confinement. Upon information and belief, the wardens, Mansukhani and Scarantino, made the decision to send Mr. Longworth to SHU instead of reprimanding or terminating Beck and instead of providing Mr. Longworth the counseling he required and was entitled to under PREA.

5

Case 5:21-ct-03242-FL   Document 1   Filed 08/16/21   Page 5 of 9

34. When Beck discovered Mr. Longworth's termination from his work assignment, she sent $100.00 to his prison account via Western Union, further tightening her hold over – and resulting sexual control of – Mr. Longworth.

35. Upon his move to SHU, Mr. Longworth also gained the courage to report Beck's misconduct himself. On September 28, 2018, Mr. Longworth reported Beck to Special Investigative Agent Sean Kearney.

36. Just days after Mr. Longworth made his report, an investigation began and Beck was terminated from her employment. To Mr. Longworth's knowledge, no further legal, criminal or disciplinary action has been taken against Beck.

37. As a result of the investigation, on January 16, 2019, the BOP ordered Mr. Longworth's transfer from FCI Butner to FCI Petersburg Low. On the transfer order, it was noted that on September 28, 2018, "Longworth incurred an incident report, which resulted in an OIG investigation. The investigation has been concluded and it has been determined that Longworth can no longer be housed on the Butner Complex."

38. After Mr. Longworth's transfer to FCI Petersburg, Beck continued to harass and intimidate Mr. Longworth by sending him sexually explicit and threatening letters. She continued this particular conduct after her termination from the BOP, beyond the course and scope of her employment.

39. Mr. Longworth's pursuit and sexual victimization was willingly perpetrated by Beck.

40. The sexual misconduct was permitted to continue, and effectively sanctioned, by the negligence Mansukhani, Scarantino, Burrell, and Haught demonstrated

to Mr. Longworth's rights. Indeed, they knew of Beck's conduct, but failed to report or properly supervise Beck.

41. It was well-documented by the BOP that Mr. Longworth was the victim of childhood abuse and suffered from serious mental health issues. The sexual misconduct perpetrated by Beck and openly disregarded by Defendants Mansukhani, Scarantino, Burrell, and Haught caused Mr. Longworth serious emotional distress and trauma.

## COUNT I
## NEGLIGENCE
## UNDER THE FEDERAL TORT CLAIMS ACT
### (Against Defendant United States of America)

113. Paragraphs 1 through 112 are realleged as though fully set forth herein.

114. The United States of America owns and operates FCC Butner to house inmates who are accused of or have been convicted of federal crimes.

115. The United States of America employed the individuals named in this matter, who at all times relevant were acting in the scope of their employment.

116. Beck was negligent in the above-described sexual misconduct directed at Mr. Longworth, which resulted in injury to him.

117. Mansukhani and Scarantino were negligent in that they failed to adequately train, supervise and/or discipline their subordinates, including Beck, Haught and Burrell.

118. The failures by Mansukhani and Scarantino to adequately train, supervise and/or discipline directly resulted in the sexual misconduct of Beck and injury to Mr. Longworth.

119. Haught and Burrell were negligent in that they failed to recognize, prevent and/or report sexual misconduct by Beck, as required by federal law.

120. The failures by Haught and Burrell to recognize, prevent and/or report Beck's sexual misconduct toward Mr. Longworth directly resulted in injury to Mr. Longworth.

121. Specifically, Mr. Longworth suffered emotional distress, pain, suffering and loss of enjoyment of life. Mr. Longworth has also suffered physical injuries attendant to such emotional and psychological injuries.

122. The conduct by Beck, Burrell, Haught, Mansukhani and Scarantino were the direct and proximate cause of Mr. Longworth's injuries.

123. As agents and/or employees of the United States of America, the negligent conduct committed by Beck, Burrell, Haught, Mansukhani and Scarantino is imputed to Defendant United States of America.

124. As a result, Mr. Longworth is entitled to and seeks to recover damages to the maximum extent permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment against the Defendant, and grant:

A. Damages to Plaintiff Justin Longworth as compensation for all injuries and losses which were caused by the negligent acts and omissions of the Defendant and its employees and agents, without any negligence on the part

of Plaintiff contributing thereto, jointly and severally, in an amount to be determined at trial;

B. Attorneys' fees and the costs associated with this action 42 U.S.C. § 1988, including expert witness fees, on all claims as allowed by law; and

C. Any further relief that this Court deems just and proper, and any other appropriate relief available at law and equity.

Dated: August 16, 2021

Respectfully submitted,

/s/ Catharine E. Edwards
Catharine E. Edwards
North Carolina Bar No. 52705
**EDWARDS KIRBY, LLP**
3201 Glenwood Avenue, Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 780-5400
Facsimile: (919) 800-3099
cedwards@edwardskirby.com

***Counsel for Plaintiff Justin Longworth***