IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CT-3242-FL

JUSTIN M. LONGWORTH,               )
                                   )
                  Plaintiff,       )
                                   )
       v.                          )                    ORDER
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                  Defendant.       )


       This matter is before the court on defendant's motion to dismiss pursuant to Federal Rules

of Civil Procedure 12(b)(1) and 12(b)(6).   (DE 8).   The motion was briefed fully and in this

posture the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

       Plaintiff, a former federal inmate, commenced this action on August 16, 2021, asserting a

single count of negligence against defendant United States, pursuant to the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. §§ 2671–2680.   Plaintiff alleges that Sherry Beck ("Beck"), a Federal

Bureau of Prisons ("FBOP") corrections official, sexually assaulted him and negligently caused

him emotional distress.   He further alleges FBOP officials Andrew Mansukhani ("Mansukhani"),

Anthony T. Scarantino ("Scarantino"), Patrick Burrell ("Burrell"), and Matthew W. Haught

("Haught") were negligent in their supervision and retention of Beck.

       Defendant moved to dismiss the complaint, arguing that the court lacks subject matter

jurisdiction over the FTCA claim to the extent it is premised on alleged negligence of Beck,

because she was not acting within the scope of her employment when she assaulted plaintiff. In the alternative, defendant argues plaintiff fails to allege sufficient facts to establish negligence on the part of Beck, Mansukhani, Scarantino, Burrell, or Haught. Plaintiff responded in opposition to the motion to dismiss, and defendant replied.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. Following convictions for federal criminal offenses, plaintiff entered FBOP custody on or about May 10, 2016, at the Federal Correctional Institution in Sheridan, Oregon. (Compl. (DE 1) ¶¶ 19–20). During intake, plaintiff disclosed that he was sexually abused as a child, which FBOP officials documented in his file. (Id. ¶ 21). In addition to his history of sexual abuse, plaintiff suffers from bi-polar disorder, post-traumatic stress disorder, and borderline personality disorder. (Id. ¶ 22). Plaintiff takes psychotropic medications for these conditions. (Id.). He also has a history of multiple suicide attempts.

On July 22, 2016, FBOP officials transferred plaintiff to FCI-Butner. (Id. ¶ 23). Plaintiff was assigned to work as a plumber in the facilities department. (Id. ¶ 24). Throughout this assignment, plaintiff received positive work evaluations. (Id.). Plaintiff met Beck, the FCI-Butner secretary of facilities, during his work assignment as a plumber. (Id. ¶ 25). Among other duties, Beck was in charge of managing payroll for all inmate employees. (Id.).

Beck took an inappropriate interest in plaintiff, which "soon advanced to daily, aggressive sexual pursuit of him." (Id. ¶ 26). Initially, plaintiff rejected her advances, but he ultimately was unsuccessful in his attempts to abate her conduct. (Id.). The sexual abuse included forced oral sex, fondling and groping of the genitals, kissing, and biting. (Id.). Beck also forced plaintiff to

2

perform these same acts on her. (Id.). The sexual abuse occurred in both the main offices of the facilities department and in the attic, where Beck would lure plaintiff by stating she needed assistance with work-related tasks. (Id. ¶ 28). Plaintiff and Beck spent an unusual amount of time alone together. (Id.).

Moreover, FBOP officials "did nothing to stop, abate or report the sexual misconduct Beck patently perpetrated." (Id. ¶ 28). These officials included Mansukhani, the warden of FCI Butner-Medium, Scarantino, a housing unit manager, Burrell, a plumber for the facilities department, and Haught, a maintenance mechanic. (Id.). Plaintiff alleges these officials "knew of Beck's conduct, but failed to report or properly supervise Beck." (Id. ¶ 40).

Initially, plaintiff did not report Beck's misconduct based on his fear of retaliation by Beck and other FBOP staff. (Id. ¶ 29). Beck also coerced plaintiff into remaining silent through "continuous manipulation, coercion and bribery." (Id. ¶ 29). Plaintiff believed he could not disobey Beck because she was in charge of payroll for the facilities department. (Id.). Beck's status as an authority figure over plaintiff allowed her to coerce plaintiff into compliance with almost any request she made of him. (Id. ¶ 30). For example, at Beck's request, plaintiff tattooed Beck's initials and retirement date on his body. (Id.).

Long after the sexual assaults began, Haught reported Beck's behavior to her supervisors. (Id. ¶ 31). However, Haught did not report Beck's conduct to his own superiors, including Mansukhani or Scarantino, as required by FBOP policy. (Id.). Haught also failed to report Beck's behavior to a special investigative agent. (Id.).

On September 26, 2018, plaintiff was fired from his work assignment. (Id. ¶ 32). FBOP officials then placed plaintiff in the special housing unit ("SHU"), commonly referred to as solitary

3

confinement. (Id. ¶ 33). At this point, Mansukhani and Scarantino did not reprimand or terminate Beck, and they did not provide plaintiff with counseling as required under the Prison Rape Elimination Act. (Id.).

Two days later, plaintiff reported Beck's conduct to an FBOP special investigative agent. (Id. ¶ 35). Within a matter of days, FBOP officials investigated the claims and terminated Beck from her employment. (Id. ¶ 36). However, no further legal, criminal, or disciplinary action was taken against Beck. (Id.).

On January 26, 2019, plaintiff was transferred to FCI-Petersburg Low based on findings from the investigation into Beck's conduct. (Id. ¶ 37). The transfer order provides that plaintiff "incurred an incident report, which resulted in an OIG investigation. The investigation has been concluded and it has been determined that [plaintiff] can no longer be housed on the Butner Complex." (Id.). After the transfer, Beck continued to harass and intimidate plaintiff by sending him sexually explicit and threatening correspondence. (Id.).

**COURT'S DISCUSSION**

A.    Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[1]    Where a defendant raises a "facial challenge[] to [subject matter jurisdiction] that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court]

---

[1]    Internal citations and quotation marks are omitted from all citations unless otherwise specified.

would in context of a Rule 12(b)(6) challenge." <u>Kenny v. Wilson</u>, 885 F.3d 280, 287 (4th Cir. 2018). On the other hand, when a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." <u>Richmond, Fredericksburg & Potomac R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009).

B.    Analysis

1.    Scope of Employment

Defendant argues the court lacks subject matter jurisdiction over the claims premised on Beck's actions because the alleged assaults were not committed within the scope of her federal

employment.

The FTCA allows complainants to hold the United States liable for certain tort claims "in the same manner and to the same extent as a private individual," 28 U.S.C. § 2674, including "for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] while acting within the scope of his [or her] office or employment." Id. § 1346(b)(1). This is a limited waiver of the United States' general "immun[ity] from suit." Clendening v. United States, 19 F.4th 421, 426 (4th Cir. 2021); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (explaining that "[s]overeign immunity is jurisdictional in nature" and thus "the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit"). Courts should not extend the waiver of sovereign immunity beyond that which Congress intended. United States v. Kubrick, 444 U.S. 111, 116 n.4 (1979). When invoking a waiver, the plaintiff bears the burden to show "that an unequivocal waiver of sovereign immunity exists." Welch v. United States, 409 F.3d 646, 651 (4th Cir.2005). If the plaintiff fails to meet this burden, the claims must be dismissed. Id.

As set forth above, the waiver of immunity applies only to actions taken "within the scope of employment," and that determination, in turn, presents a jurisdictional inquiry. See 28 U.S.C. § 1346(b)(1); Meyer, 510 U.S. at 475; Kerns v. United States, 585 F.3d 187, 193–94 (4th Cir. 2009). The scope of employment inquiry "is governed by the law of the state in which the act occurred." U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899 F.3d 236, 249 (4th Cir. 2018).

Before turning to North Carolina law, the court addresses plaintiff's argument that under Kerns the scope of employment question cannot be resolved on the pleadings. Kerns holds that

6

where the facts necessary for revolving both jurisdiction and the merits are inextricably intertwined, the court should "assume jurisdiction" and proceed to the merits. 585 F.3d at 195. That holding, however, applies where the defendant challenges the factual predicate of the jurisdictional allegations, requiring discovery into factual issues relevant to both the merits and jurisdiction. See id. at 192–96. In that circumstance, the court must afford the plaintiff discovery and all other procedural protections necessary to prove his case on the merits. See id.

By contrast, if the defendant assumes the facts of the complaint are true and argues that such allegations do not establish defendant acted within the scope of employment, the Rule 12(b)(1) motion can be resolved on the pleadings provided the plaintiff is afforded the same protections that he would receive under Rule 12(b)(6). See id. at 193; see also Lins v. United States, 847 F. App'x 159, 162 (4th Cir. 2021) (affirming dismissal on Rule 12(b)(1) grounds where "even taking the allegations in Appellant's complaint . . . as true, [the defendant] was not acting with the scope of her employment"). Because defendant argues the complaint's allegations, even if assumed true, fail to establish Beck acted within the scope of her employment, the motion is properly considered under Rule 12(b)(1). See Kerns, 585 F.3d at 193.

In the alternative, the court considers the scope of employment issue as to the claims premised on Beck's actions pursuant to Rule 12(b)(6). The FTCA provides that the United States is liable for the negligent acts of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In other words, plaintiff must show that the "the government would be liable as an individual under the law of the state where the negligent act occurred." Kerns, 585 F.3d at 194. As plaintiff's employer, defendant would be liable for

7

Beck's conduct pursuant to a theory of respondeat superior or vicarious liability.  See Medlin v. Bass, 327 N.C. 587, 592 (1990).  Vicarious liability, in turn, requires that the employee's tortious act was either "expressly authorized; committed within the scope of employment and in furtherance of his master's business . . .; or [was] ratified by the principal."  See id.

Plaintiff argues vicarious liability attaches to Beck's actions because they were committed within the scope of her employment.  (See Pl's Resp. (DE 19) at 17).  Plaintiff therefore must plead, as a substantive element of his claim for vicarious liability, that Beck's actions were within the scope of employment.  See Medlin, 327 N.C. at 592; see also Kerns, 585 F.3d at 193–94 (discussing similar rule under Maryland law).  Accordingly, the claims premised on Beck's conduct are subject to dismissal under either Rule 12(b)(1) or Rule 12(b)(6) if plaintiff has failed to allege Beck acted within the scope of her employment.  See Kerns, 585 F.3d at 193–94; Durden v. United States, 736 F.3d 296, 301–02 (4th Cir. 2013); see also Lins, 847 F. App'x at 162; Medlin, 327 N.C. at 592.

The court thus turns to whether the facts alleged in the complaint permit a reasonable inference that Beck acted within the scope of her employment.  The parties agree that North Carolina law governs the scope of employment issue because the alleged tort claims occurred in this state.  (See Def's Mem. (DE 9) at 5; Pl's Resp. (DE ) at 7–8); see also U.S. Tobacco, 899 F.3d at 249.  Under North Carolina law, an act is within the scope employment if "the employee was engaged in doing something he was employed, or otherwise authorized, to do for the defendant employer."  Wegner v. Delly-Land Delicatessen, Inc., 270 N.C. 62, 66 (1967); see also U.S. Tobacco, 899 F.3d at 249 (noting North Carolina law requires that the employee "at the time of the incident, was acting in furtherance of the principal's business and for the purpose of

8

accomplishing the duties of his employment").   Furthermore,

> If the act of the employee was a means or method of doing that which he was employed to do, though the act be wrongful or even forbidden, the employer is liable for the resulting injury, but he is not liable if the employee departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do.

Wegner, 270 N.C. at 66–67.

In Medlin v. Bass, the North Carolina Supreme Court addressed whether sexual assaults are within the scope of employment.   327 N.C. at 587.   There, a school principal assaulted a student after calling her to his office during school hours purportedly to discuss attendance issues. Id. at 592.   Even though the defendant committed the assault at his place of employment, during school hours, and acted within his authority to summon the student to his office, he "stepped out of the course and scope of his employment" when he committed the sexual assault.   Id. at 595. In other words, the assault "advance[ed] a completely personal objective . . . that could advance no conceivable purpose of [his employer]."   Id. at 594.   Thus, the sexual act was "for personal reasons" and his acts were "beyond the scope of his employment as a matter of law."   Id.

Medlin establishes that Beck's actions were beyond the scope of her employment.   Beck was a secretary of facilities at FCI-Butner, (DE 1 ¶ 25), and plaintiff has not alleged that a sexual assault would be within the scope of that employment.   Contrary to plaintiff's assertions, the fact that Beck committed the sexual misconduct during work hours and while interacting with plaintiff initially as part of her employment responsibilities does not bring her actions within the scope of employment.   See Medlin, 327 N.C. at 594 (discussing principle that even if initial contact was within the defendant's legitimate employment duties, the defendant moves outside the scope of employment when the sexual assault begins).   As in Medlin, when Beck "willingly perpetrated"

9

sexual acts on plaintiff – who cannot consent to them as a matter of law – she advanced a "completely personal objective [that] could advance no conceivable purpose of [her employer]." Id. at 594; (Compl. (DE 1) ¶ 39).

Plaintiff's arguments and supporting case law do not compel a different result. Although Beck may have been "authorized" to meet with plaintiff alone due to her employment responsibilities, (see Pl's Resp. (DE 10) at 8), that fact is irrelevant under Medlin. As explained above, Beck stepped outside of the scope of her employment when she sexually assaulted plaintiff. See Medlin, 327 N.C. at 594.

As plaintiff notes, North Carolina courts have held in unrelated contexts that an employer can commit an intentional tort while remaining within the scope of his employment. See Robinson v. McAlhaney, 214 N.C. 180 (1938) (holding that intentional assault committed while defendant was employed to move plaintiff's possessions presented jury question on scope of employment); Munick v. Durham, 181 N.C. 188 (1921) (concluding defendant acted "in his capacity as [an] agent" of the defendant when he assaulted plaintiff as he attempted to pay his water bill).[2] However, the North Carolina Supreme Court has held specifically that a sexual assault is outside the scope of employment. See Medlin, 327 N.C. at 594. Because Medlin is a North Carolina Supreme Court case that addresses the most analogous circumstances, the court must follow that precedent. See Brendle v. Gen. Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir. 1974).

Plaintiff next argues that he pleaded negligence claims arising out of Beck's conduct and not intentional torts, and thus defendant cannot rely on case law establishing sexual assaults are

_____

[2]      Notably, Medlin distinguished Munick on the ground that Munick relied on an outdated "while on duty" standard for scope of employment, instead of the correct standard set forth above. 327 N.C. at 595.

10

outside the scope of employment. Plaintiff, however, cites no authority for this proposition. Regardless of the labels plaintiff attaches to his claims, he still must show that the factual allegations in the complaint establish Beck acted within the scope of her employment. See Medlin, 327 N.C. at 592–94. He has not done so for the reasons explained above. And to the extent plaintiff is arguing that negligent acts occurred prior to the sexual assaults themselves, the complaint is devoid of specific factual allegations supporting such claims. (See DE 1).

Plaintiff also relies on Estes v. Comstock Homebuilding Cos., Inc. for the proposition that "an employee can simultaneously perform a duty for his/her employer while also undertaking a personal endeavor" and "if the personal endeavor is performed negligently, then the employee has also performed his/her duty negligently." 195 N.C. App. 536, 544 (2009). Here, however, Beck was not "simultaneously" performing a duty for her employer and a personal endeavor that was performed negligently. She ceased performing any duty for her employer when she sexually assaulted plaintiff. See Medlin, 327 N.C. at 594.

Finally, plaintiff argues that discovery is necessary to determine whether Beck was acting within the scope of her employment when she assaulted plaintiff. As set forth above, Medlin establishes that Beck was acting outside the scope of her employment during the assaults even if the court assumes the truth of all factual allegations in the complaint and draws all reasonable inferences in favor of plaintiff. See id.; Nemet Chevrolet, 591 F.3d at 255 (discussing Rule 12(b)(6) standard). The court has afforded plaintiff all the procedural protections required under Rule 12(b)(6), and he nevertheless failed to plead this jurisdictional element of his claim. See Kerns, 585 F.3d at 193. Plaintiff also has not pointed to any additional facts he could obtain in discovery, or that he could plead, that would remove this case from Medlin's purview. See

11

<u>Durden</u>, 736 F.3d at 307–08.   Thus, even if the scope of employment inquiry often depends on factual development,[3] that fact does not alter the court's analysis in this case that Beck's conduct falls outside the scope of employment as a matter of law.   See <u>Medlin</u>, 327 N.C. at 594.

Accordingly, the court lacks subject matter jurisdiction over the negligence claims premised on Beck's conduct because she was not acting with the scope of her employment when she coerced plaintiff into sexual activity.   See <u>Kerns</u>, 585 F.3d at 194 (explaining scope of employment is a jurisdictional requirement).   In the alternative, the complaint fails to state a claim because defendant cannot be held vicariously liable for tortious acts taken outside the scope of employment.   <u>Medlin</u>, 327 N.C. at 592.

2.      Merits

The remaining Rule 12(b)(6) arguments are directed to additional elements of the underlying negligence claims premised on Beck's sexual misconduct, and, separately, the claims premised on Burrell, Haught, Mansukhani, and Scarantino's alleged negligent retention and hiring. The court begins with the claims arising from Beck's conduct.

Even assuming the scope of employment issue is not capable of resolution on the pleadings, plaintiff has failed to state a claim premised on Beck's conduct for additional reasons.   Plaintiff argues that Beck's actions amounted to negligent infliction of emotional distress.   Under North Carolina law, a claim for negligent infliction of emotional distress requires that: "(1) the defendant

_____

[3]      Plaintiff's reliance on <u>Zeranti v. United States</u>, 358 F. Supp. 3d 244 (W.D.N.Y. 2019), is misplaced.   The question in that case was whether the defendant's psychotherapeutic treatment and other responses to the plaintiff's mental health symptoms, prior to commencement of the sexual relationship, were committed negligently and within the scope of employment.   <u>See id.</u> at 255–57.   In that context, the Western District of New York held that the scope of employment issue was a jury question.   <u>Id.</u>   Here, plaintiff has not alleged any facts suggesting Beck committed negligent acts within the scope of her employment prior to the initiation of sexual misconduct.   (<u>See</u> Compl. (DE 1); <u>see also</u> Pl's Resp. (DE 10) at 12 (characterizing plaintiff's "primary underlying tort claim" as Beck "utilizing her position to coerce [plaintiff] unwittingly into a sexual relationship")).

12

negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress."   Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Plaintiff has failed to plead the first element.   The factual allegations in the complaint allege that Beck "willingly perpetrated," and "forced" plaintiff into unwanted sexual activity, including "forced oral sex, fondling and groping of the genitals, kissing, and biting."   (DE 1 ¶¶ 26–28, 39).   These intentional sexual assaults cannot reasonably be construed as "negligent conduct."   See Johnson, 327 N.C. at 304; Jenkins v. Dep't of Motor Vehicles, 244 N.C. 560, 563 (1956) ("[A]n intentional act of violence is not a negligent act.").   Moreover, the complaint is devoid of allegations suggesting Beck breached a duty of care owed to plaintiff independent of her intentional sexual assaults.   See Stein v. Asheville City Bd. Of Educ., 360 N.C. 321, 328 (2006) (stating elements of negligence claim); see also Weinraub v. United States, 927 F. Supp. 2d 258, 266 (E.D.N.C. 2012) ("[W]hile plaintiff has attempted to set forth the elements of a negligence claim, there are no factual allegations in the compliant with regards to that claim that are in any way distinct from those that support plaintiff's claims for assault and battery, false imprisonment, and false arrest.").

Under North Carolina law, when a party's actions amount to an intentional tort,[4] the

---

[4]   The court observes that the intentional tort exception to the FTCA's waiver of sovereign immunity does not apply to Beck because she was employed as an FBOP corrections officer at the time of the alleged conduct.   See Millbrook v. United States, 569 U.S. 50, 57 (2013) (holding the FTCA waives sovereign immunity for intentional torts committed by FBOP corrections officers based on the "law enforcement proviso" in 28 U.S.C. § 2680(h)); see also 28 U.S.C. § 2680(h); (Def's Mem. (DE 9) at 4 n.4 (acknowledging FTCA's intentional torts exception does not apply to Beck)).   Plaintiff, however, has not pleaded intentional tort claims and he expressly disclaims any such reading of the complaint.   (Pl's Resp. (DE 10) at 7–8, 11).

13

concept of negligence no longer applies.   Pleasant v. Johnson, 312 N.C. 710, 715 (1985); Lynn v. Burnette, 138 N.C. App. 435, 441 (2000) (recognizing that intentional torts and negligence are "mutually exclusive theories of liability" and noting that a plaintiff may not "waive the intentional injury and elect to sue in negligence instead"); see also Weinraub, 927 F. Supp. 2d at 266 (dismissing negligence claim in FTCA action because plaintiff pleaded intentional torts and such conduct cannot also form the basis of a negligence claim under North Carolina law).   For the reasons explained above, plaintiff pleads exclusively intentional torts on the part of Beck and his negligence claims premised on the same conduct are not cognizable under North Carolina law. See Pleasant, 312 N.C. at 715; Lynn, 138 N.C. App. at 441–42; see also Weinraub, 927 F. Supp. 2d at 266; (Compl. (DE 1)).   Plaintiff therefore has failed to plead a claim for negligent infliction of emotional distress or any other negligence-based claim under North Carolina law.[5]

The nonbinding cases plaintiff relies on do not compel a different result.   (See Pl's Resp. (DE 10) at 13–15).   Plaintiff primarily relies on Guyton v. United States, a case that interpreted South Carolina law and that does not address whether plaintiff's allegations of intentional assaults preclude his claim for negligence.   See No. 8:18-CV-609, 2019 WL 6170565, at *6–7 (D.S.C. Feb. 7, 2019).   The remaining cases also do not address the North Carolina rule that a negligence claim is barred where the plaintiff's factual allegations permit inference only that defendant committed intentional torts.   See Tate v. First-Citizens Bank & Tr. Co., No. 5:07-CV-492-BO, 2009 WL 959971, at *6–7 (E.D.N.C. Apr. 8, 2009); Phillips v. J.P. Stevens & Co., No. 3:92CV94,

---

[5]       In addition to negligent infliction of emotional distress, plaintiff mentions that Beck's conduct amounts to "gross negligence."   (Pl's Resp. (DE 9) at 7).   But plaintiff does not explain how the factual allegations in the complaint amount to gross negligence independent of his claim for negligent infliction of emotional distress.   (See id. at 12–15).   The court therefore does not separately address claims for gross negligence herein.   See Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (explaining party waives claim by failing to argue it in briefing).

14

1995 WL 794200, at *14–15 (M.D.N.C. May 1, 1995).

In sum, plaintiff's claims premised on Beck's actions are deficient under Rule 12(b)(6) for two independent reasons. First, the sexual assaults and related conduct were outside the scope of Beck's employment as a matter of law. Second, the factual allegations establish solely intentional torts on the part of Beck, and plaintiff cannot bring negligence claims premised on conduct that amounts to intentional torts.

The court next turns to the claims premised on Burrell, Haught, Mansukhani, and Scarantino's conduct. Plaintiff asserts that he is bringing claims for negligent supervision based on the conduct of these four officials, and a negligent retention claim premised on the conduct of Mansukhani and Scarantino. (Pl's Resp. (DE 10) at 15). North Carolina law recognizes a common law claim for negligent retention and supervision. See Medlin, 327 N.C. at 590–91. The elements of the claim are:

> (1) the specific negligent act on which the action is founded[;] (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision; and (4) that the injury complained of resulted from the incompetency proved.

Id. at 591. North Carolina courts, however, have recognized the limited nature of this claim. In the two cases where the claim was "allowed" to proceed to a jury, the plaintiff established "well-known and certain, ongoing foreseeable harms occurring on the employer's premises while the employer was on duty." Braswell v. Braswell, 330 N.C. 363, 373 (1992); see also Lamb v. Littman, 128 N.C. 361, 363–64 (1901); Hogan v. Forsyth Country Club, 29 N.C. App. 483, 494–95 (1986). Braswell further recognizes a "presumption that the master has properly performed his duty in selecting his [employees]." 330 N.C. at 373–74. To overcome this presumption,

15

plaintiff must allege facts showing actual or constructive notice of the employee's "bad habits or unfitness."  See id.; see also Medlin, 327 N.C. at 592 (requiring evidence that the defendant "knew or reasonably could have known of [the tortfeasor's] alleged pedophilic tendencies prior to the incident"); Hogan, 29 N.C. App. at 492 (allowing negligent retention claim against supervisor who had been informed repeatedly about an employee's sexual harassment but failed to intervene).

Plaintiff has failed to plead the notice element of his negligent supervision and retention claim.  The allegation that Burrell, Haught, Mansukhani, and Scarantino "knew" about Beck's behavior, (see Compl. (DE 1) ¶ 40), is a naked assertion devoid of any factual enhancement, and is not entitled to the presumption of truth on a Rule 12(b)(6) motion.   See Iqbal, 556 U.S. at 680–81 (holding allegations that defendants "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff] to harsh conditions of confinement" were conclusory and "not entitled to the assumption of truth" at the motion to dismiss stage); Nadendla v. WakeMed, 24 F.4th 299, 305–06 (4th Cir. 2022).

Plaintiff next argues that the court can infer Burrell, Haught, Mansukhani, and Scarantino's knowledge from the following: 1) that Mansukhani was the warden, Scarantino a housing unit manager, and Haught and Burrell were each employed in the facilities department and worked closely with plaintiff; and 2) that plaintiff spent an unusual amount of time alone with Beck.   (Pl's Resp. (DE 10) at 12; see also Compl. (DE 28) ¶ 28).   As to the first argument, the complaint does not specifically allege that Haught or Burrell worked closely with plaintiff.   (See DE 1 ¶ 28).[6]   In the absence of specific facts explaining how these officials' job responsibilities placed them in

---

[6]     Plaintiff argues in his response brief that Burrell was plaintiff's supervisor, (DE 10 at 16), but that fact is not pleaded in the complaint.   (See DE 1).

close contact with plaintiff during the time the sexual assaults occurred, or otherwise required close interaction with Beck, the court cannot infer based solely on the job descriptions that they reasonably could have known of Beck's conduct.   See Medlin, 327 N.C. at 592.

The allegation that Beck spent an unusual amount of time alone with plaintiff also does not give rise to an inference that Burrell, Haught, Mansukhani, or Scarantino knew or reasonably could have known about the sexual assaults.   The complaint does not allege facts suggesting these officials knew that Beck was spending an unusual amount of time with plaintiff.   (See DE 1).[7] As defendant points out, plaintiff does not allege these officials observed plaintiff and Beck spending an unusual amount of time together, that anyone reported this behavior to them prior to Haught's report (discussed below), or that they spent significant time with Beck or plaintiff such that they should have known about the sexual misconduct or unusual amount of time they spent together.   (Def's Mem. (DE 9) at 14).

But even assuming the complaint could be read to suggest these officials knew Beck and plaintiff often were alone together, that fact is insufficient to establish actual or constructive notice of Beck's alleged sexual assaults.   Because plaintiff does not dispute that his job responsibilities required some contact with Beck, the "unusual" amount of time they spent together may be explained on numerous alternative grounds that are far more plausible than forced sexual abuse. See Iqbal, 556 U.S. at 682 (explaining that where an "obvious alternative explanation [for the conduct exists] . . . the purposeful, invidious discrimination respondent asks us to infer is not a plausible conclusion").   Plaintiff, for example, may have developed a friendship with Beck, or

---

[7]         As discussed further below, plaintiff does allege that Haught reported Beck's conduct.   (DE 1 ¶ 31).   But that allegation does not establish that Haught knew in advance of his report that Beck was spending an unusual amount of time with plaintiff.

17

she legitimately may have needed his assistance for various tasks and found him to be a reliable worker. The court cannot reasonably infer on the bare facts pleaded here that Burrell, Haught, Mansukhani, or Scarantino had advanced knowledge of the assaults and failed to intervene based solely on their alleged knowledge that Beck and plaintiff spent an unusual amount of time together. See Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020) (affirming dismissal of complaint where the factual allegations required the court to "speculate to fill the gaps" as to an essential element of the claim).

Plaintiff next argues that Haught knew about Beck's conduct because he reported it. (Pl's Resp. (DE 10) at 16–17; Compl (DE 1) ¶ 31). Plaintiff, however, fails to plead that Haught knew about the conduct and allowed it to continue before reporting it, or that plaintiff and Beck were allowed to continue spending time along together after the report. (See Compl. (DE 1)). Such factual content is required to plead the foreseeability and causation elements of his negligence claim. See Braswell, 330 N.C. at 373 (requiring "foreseeable harms" for negligent retention claim); Stein, 360 N.C. at 328 (explaining plaintiff must plead causation in a common law negligence action).

Finally, plaintiff argues that Burrell, Haught, Mansukhani, and Scarantino ratified Beck's conduct by firing plaintiff from his work assignment and placing him in disciplinary segregation following Haught's report, while at the same time declining to terminate or discipline Beck. (Pl's Resp. (DE 10) at 16–17; Compl. (DE 1) ¶¶ 32–34). This argument presupposes that the officials were aware of Beck's conduct for a meaningful period of time before plaintiff himself reported it. Plaintiff acknowledges that he informed FBOP officials about Beck's conduct on September 28, 2018, and that she was terminated from her employment "just days" after his report. (Compl. (DE

18

1) ¶¶ 35–36). As set forth above, plaintiff fails to offer plausible factual allegations establishing that Burrell, Haught, Mansukhani, or Scarantino were aware of Beck's conduct and ignored it for any significant period of time before September 28, 2018. If anything, the complaint suggests that plaintiff was terminated from his position and placed in disciplinary segregation – thereby preventing any further sexual abuse – shortly after Haught made his report. (See id. ¶¶ 31–36). The complaint therefore does not plausibly allege negligent retention or supervision based on a theory of ratification of Beck's conduct.

The court next turns to plaintiff's "vicarious liability" claim. Plaintiff argues that defendant "is liable for the . . . negligent acts of Beck, Haught, [Burrell,] Mansukhani and Scarantino" based on vicarious liability. (Pl.'s Resp. (DE 10) at 17). Because the court finds plaintiff failed to plead negligence claims against these individual officers, there is no basis for imposing vicarious liability in this case. See Medlin, 327 N.C. at 592–93 (requiring underlying tortious act for liability premised on respondeat superior); see also Kerns, 585 F.3d at 194. Furthermore, because Beck's acts were outside the scope of her employment as a matter of law, defendant cannot be held vicariously liable for the alleged sexual assaults. Medlin, 327 N.C. at 592–93.

In sum, even if the court assumes subject matter jurisdiction as to the claims premised on Beck's conduct, plaintiff has failed to plead negligence claims against her because his claims are based on intentional torts. Plaintiff also has not alleged negligence claims based on Burrell, Haught, Mansukhani, or Scarantino's conduct.

C.      Leave to Amend

"[T]he nature of dismissal is a matter for the discretion of the district court." Adbul-

Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 292 (4th Cir. 2018); see also Carter v. Norfolk Cmty. Hosp. Ass'n, Inc., 761 F.2d 970, 974 (4th Cir. 1985) ("[D]ismissal under Rule 12(b)(6) is . . . with prejudice unless [the court] specifically orders dismissal without prejudice. That determination is within the district court's discretion."). In exercising this discretion, the court is not required to "resolve pleading deficiencies, regardless of previously opportunities to amend or other extenuating circumstances." Adbul-Mumit, 896 F.3d at 292.

Plaintiff does not formally request leave to amend or otherwise suggest that he could plead additional facts to address the deficiencies identified by defendant. See ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 217–18 (4th Cir. 2022) (discussing principle that represented party must formally request leave to amend); Sanchez v. Whole Foods Market Grp., No. 20-2327, 2022 WL 3369521, at *2 (4th Cir. Aug. 16, 2022). Plaintiff does refer to the principle that "where a complaint does not provide sufficient factual detail, a court should allow plaintiff leave to amend" in the section of the response brief reciting the legal standard for a Rule 12(b)(6) motion. (Pl's Resp. (DE 10) at 6). But such a passing reference does not constitute a formal request to amend. See ACA Fin., 917 F.3d at 217–18. Furthermore, as noted above, plaintiff does not identify additional facts that he could plead that would address the complaint's deficiencies. See id.; Sanchez, 2022 WL 3369521, at *2. Accordingly, plaintiff's claims are dismissed with prejudice.

**CONCLUSION**

Based on the foregoing, defendant's motion to dismiss (DE 8) is GRANTED.   The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of September, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge